Brian W. KARLOVETZ, Plaintiff,

v.

Dennis A. BAKER, et al., Defendants.

No. 5:92CV2700.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 30, 1994.

Brian W. Karlovetz, plaintiff pro se and Christopher D. Stanley, Cleveland, OH, for plaintiff.

R. Paul Cushion, II, Basil J. Musnuff, Crim. Justice Section, Office of the Asst. Atty. Gen., Cleveland, OH, and Suzanne E. Mohr, Office of the Atty. Gen., Columbus, OH, for defendants.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Brian Karlovetz brings this action pursuant to 42 U.S.C. § 1983 against Dennis Baker, the Warden of Lorain Correctional Institution ("LCI"); John Dunn, a unit manager at LCI; and one Sgt. Purifoy, a unit correctional counselor at LCI. Karlovetz complains that the conditions of his confinement at LCI violate his rights under the eighth and fourteenth amendments to the United States constitution. Karlovetz filed a supplemental complaint alleging further violations of his constitutional rights. Karlovetz moves for summary judgment. The defendants oppose that motion and also move for summary judgment; Karlovetz has not specifically opposed the defendants' motion. For the reasons set out below, Karlovetz's motion is denied and the defendants' motion is granted.

### I.

The following facts are not in dispute.

On October 22, 1992, Karlovetz was processed for detention at LCI and assigned a cell. On entering the cell, he learned that his cell mate, one Isaiah Andrews, had had a positive result on a "ppd" skin test for tuberculosis. The ppd test tests for exposure to the bacterium that causes tuberculosis; it does not constitute a diagnosis of the disease. In order to determine if a person who has tested positive on this test in fact has tuberculosis, physicians use a chest X-ray and sputum test. An individual who tests negative on these tests but positive on the ppd test has, at some time in his life, been exposed to tuberculosis. Such a person, however, does not have tuberculosis and cannot transmit the disease.

Andrews informed Karlovetz that he might be capable of transmitting tuberculosis, and that he had so informed certain corrections officers. Karlovetz then spoke to Sgt. Purifoy to request transfer to another cell. Purifoy contacted the infirmary and then told Karlovetz that he had learned that Andrews did not have tuberculosis. Purifoy then told Karlovetz that he had the option of reporting to his cell or suffering disciplinary action. Karlovetz reported to his cell.

On October 23, Karlovetz "kited" Dunn, his unit manager, to request a cell transfer, although Karlovetz specifically requested that he remain in the same pod to which he was then assigned. Dunn spoke to Karlovetz on the 26th, and told him that no room was available to allow a transfer. Dunn told Karlovetz that a transfer would be possible if another inmate who was seeking a transfer were to consent to move to Karlovetz's cell; that inmate did not consent to the transfer. On October 27, two inmates were transferred from Karlovetz's pod, and Karlovetz requested a transfer to one of the spaces they vacated. Karlovetz was transferred to one of these cells on October 28.

On October 29, Karlovetz "kited" the infirmary, requesting a test for tuberculosis as soon as possible. Karlovetz tested negative on a ppd test on November 3. Andrews received a chest X-ray on that day as well. The results of this test were negative, indicating that Andrews did not have active, infectious tuberculosis. Andrews, therefore, was not capable of transmitting tuberculosis during the time that Karlovetz was housed with him. Andrews again tested negative on January 21, 1994. Karlovetz tested negative on a subsequent ppd test on December 9, 1993.

On March 31, 1993, Karlovetz was instructed to report to the infirmary. He was told by the nurse that he was to be re-tested for tuberculosis. The nurse then administered an injection. When Karlovetz asked who had ordered the test, the nurse did not respond.

Karlovetz was subsequently informed that he had again tested negative for tuberculosis.

## II.

■ Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

## III.

Karlovetz raises two issues in this action: 1) whether the defendants violated his constitutional rights in housing him with Andrews; and 2) whether the defendants violated his constitutional rights in violating Federal Rule of Civil Procedure 35(a) in testing him for tuberculosis on March 31, 1993. Each of these questions is addressed in turn below.

A. The eighth amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" (emphasis added). The "unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The infliction of pain must be more than merely negligent or unreasonable to amount to a constitutional violation. Instead, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [eighth amendment]." *Id.*

■ "[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (citation omitted). This standard thus has both an objective and a subjective component; the plaintiff must demonstrate both

that his serious medical needs have been implicated and that prison officials acted with deliberate indifference to those needs. The practice of crowding together inmates who have serious communicable diseases is actionable under the eighth amendment, since it constitutes both harm to the plaintiff's serious medical needs and demonstrates prison officials' deliberate indifference to this harm. *Helling v. McKinney,* —— U.S. ——, ——, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); *see also Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

■ Here, there is no dispute that Andrews did not have active, infectious tuberculosis during the time Karlovetz was housed with him. Karlovetz does not dispute the defendants' proffered evidence to the effect that Andrews could not have transmitted tuberculosis to Karlovetz. Consequently, Karlovetz's serious medical needs were in no way threatened. Housing Karlovetz with Andrews did not constitute a violation of Karlovetz's eighth amendment rights.

B. Federal Rule of Civil Procedure 35(a) provides in pertinent part:

> When the mental or physical condition (including the blood group) of a party or person in the custody of or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination ... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Violation of this rule does not give rise to an independent cause of action, and this Court has located no authority to the effect that violation of this rule, standing alone, gives rise to a cause of action to redress a constitutional violation. Karlovetz's allegations to the effect that the defendants violated his rights to equal protection and due process in taking action alleged to be in contravention of Rule 35(a), therefore, fail to state a claim upon which relief can be granted.

■ Viewing Karlovetz's *pro se* complaint broadly, it can be read to assert a constitutional violation not only in the defendants' alleged violation of Rule 35(a) but in their testing Karlovetz for tuberculosis *per se.* Although the Sixth Circuit has not reached the issue, the Tenth Circuit has held that a nonconsensual test for HIV does not violate a prisoner's constitutional rights. *Dunn v. White,* 880 F.2d 1188 (10th Cir.1989). The Second Circuit has gone so far as to hold that a prison's *failure* to test all incoming inmates for tuberculosis and other serious, communicable diseases violates non-infected inmates' eighth amendment rights. *LaReau v. Manson,* 651 F.2d 96, 109 (2nd Cir.1981). It appears likely, then, that nonconsensual testing of inmates for tuberculosis is constitutional.

This Court, however, need not, and does not, reach the issue of whether nonconsensual testing of inmates for tuberculosis is constitutional, because the complaint contains no allegation to the effect that Karlovetz did not consent to the March 31, 1993 test. This Court has located no authority to support the proposition that a prison violates an inmate's constitutional rights merely by testing him for tuberculosis, absent an allegation that the inmate did not consent to the test. Karlovetz's allegations fail to state a claim on which relief can be granted.

Oddly, although neither Karlovetz's nor the defendants' motions for summary judgment purport to be directed to only part of the complaint, neither motion contains any discussion of Karlovetz's claims advanced in his supplemental complaint. Notwithstanding this, the defendants' motion on its face seeks summary disposition of the entire claim against them. Consequently, Karlovetz was on notice that the entirety of his complaint was before this Court on a dispositive motion, and disposition of the claims raised in his supplemental complaint is appropriate.

IV.

No material facts remain in dispute as to any of Karlovetz's claims, and the defendants are entitled to judgment as a matter of law. Accordingly, Karlovetz's motion for summary

judgment is denied, the defendants' motion for summary judgment is granted, and judgment is entered in favor of the defendants.

This order is final and appealable.

IT IS SO ORDERED.